**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Theresa M. Petrello

    v.                                  Civil No. 16-cv-008-LM
                                           Opinion No. 2017 DNH 053

City of Manchester, et al.

**O R D E R**

Theresa M. Petrello brings this action under 42 U.S.C. §
1983 against the City of Manchester and Manchester Police
Officer Ryan J. Brandreth, alleging violations of her First,
Fourth, and Fourteenth Amendment rights.  Petrello claims that
Officer Brandreth violated her constitutional rights when he
charged her with disorderly conduct while she was peacefully
panhandling in public.  Officer Brandreth moves for judgment on
the pleadings on qualified-immunity grounds.  Plaintiff objects.

**Standard of Review**

"The standard of review of a motion for judgment on the
pleadings under Federal Rule of Civil Procedure 12(c) is the
same as that for a motion to dismiss under Rule 12(b)(6)."
Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st
Cir. 2014) (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 5
(1st Cir. 2007)); see also Portugués-Santana v. Rekomdiv Int'l
Inc., 725 F.3d 17, 25 (1st Cir. 2013) ("A motion for judgment on
the pleadings is treated like a Rule 12(b)(6) motion to dismiss

. . . .").  Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation and internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)).

## Background

The relevant facts are not in dispute.[1]  On June 3, 2015, Petrello was peacefully soliciting donations in a public place in Manchester, New Hampshire.  Specifically, Petrello was standing on the grassy area between the roadway and sidewalk on

---

[1] The facts are summarized from Petrello's second amended complaint (doc. no. 9) and the exhibits attached thereto.  See Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008).

the west side of Maple Street, south of Bridge Street.[2]   Petrello
held a sign that said "Veteran.  Have Proof.  Anything Will Help
Please."  Doc. no. 9 at ¶ 19.  Petrello never stepped in the
road to either solicit or collect donations.  Petrello did not
approach or touch any passing cars unless the driver or
passenger of the car gestured or indicated to her that they
wanted to make a donation.

　　　Officer Brandreth was on patrol at a nearby Seven-Eleven
store and noticed Petrello panhandling with her back to the
traffic light.  Officer Brandreth watched as approximately seven
cars stopped and handed Petrello items.  Then, while the traffic
light was green, a Cadillac driving northbound on Maple Street
came to a complete stop and handed something to Petrello.
Petrello took the item from the driver, but she did not step in
the roadway.  When the Cadillac stopped, a Jeep driving behind
the Cadillac was forced to stop.  The Cadillac then drove
through the intersection, but the light turned red and the Jeep
was unable to make it through the intersection.  If the Cadillac
had not stopped at the green light, then the Jeep would have
made it through the intersection while the light was still green
and would not have had to wait for the next green light.

_____

　　　[2] At that location, Maple Street is a two-lane, one-way
street with traffic heading northbound.

Officer Brandreth approached Petrello and told her that she could not stop cars.  Petrello responded that she did not stop anyone.  Officer Brandreth obtained Petrello's driver's license and discovered that she had been issued a summons on May 5, 2015, for being a pedestrian in the roadway.  Officer Brandreth then issued Petrello a summons to appear in Manchester District Court on July 9, 2015, on one count of disorderly conduct, in violation of RSA 644:2, II(c), "for obstructing vehicular traffic."  See doc. no. 9 at ¶ 25; doc. no. 9-3 at 7 of 18. Officer Brandreth did not arrest Petrello.  On August 31, 2015, the charge against Petrello was nolle prossed.

Petrello alleges that the Manchester Police Department developed and implemented a policy to detain, harass, threaten, disperse, and charge panhandlers for allegedly "obstructing vehicular traffic on public streets" in violation of RSA 644:2, II(c), even when the panhandlers were in a public place and did not step in the roadway.  See doc. no. 9 at ¶¶ 7, 68, 86. Petrello points to a pattern of similar police conduct, including Officer Brandreth's own conduct, and internal police department documents and emails to show the existence of the panhandling policy.  Specifically, Petrello cites an email dated July 2, 2015, from Police Captain James Soucy of the Manchester Community Policing Division to all officers with the subject

4

line "Panhandlers."  In relevant part, the email advises
officers as follows:

> Simply put, if a Panhandler does any of the following
> — you may use these options:

> <u>Action:</u>          Panhandler causes traffic to slow or
>                  become impeded when accepting donations
>                  — even if they're not standing or step
>                  into a public way

> <u>Officer's</u>        Charge with DOC 644:2(c) Obstructing
> <u>Option:</u>          vehicular traffic on any public street

<u>See</u> doc. no. 9-1 at 37 of 39; doc. no. 9 at ¶ 10.  Petrello
alleges that Officer Brandreth acted pursuant to this policy on
June 3, 2015, when he stopped her and charged her with
disorderly conduct.  <u>See</u> <u>id.</u> at ¶¶ 72, 88.

In her complaint, Petrello brings five claims under 42
U.S.C. § 1983, three against both Officer Brandreth and the City
of Manchester (Counts I-III) and two against only the city
(Counts IV and V).  <u>See</u> doc. no. 9.  Only Counts I-III are
relevant for purposes of the instant motion.  In these counts,
Petrello alleges violations of her rights under the Fourth
Amendment (Count I), First Amendment (Count II), and Fourteenth
Amendment's Equal Protection Clause (Count III).  She brings
Counts I-III against the City of Manchester, under Monell v.
Department of Social Services, 436 U.S. 658 (1978), for
establishing a policy, practice, or custom that violated

Petrello's constitutional rights, and against Officer Brandreth
in his individual capacity as a police officer.

On August 1, 2016, Officer Brandreth filed the instant
motion for judgment on the pleadings on Counts I-III, asserting
that he is entitled to qualified immunity, and, alternatively,
that he did not violate Petrello's constitutional rights under
the facts alleged in the complaint.  See doc. no. 14.

**Discussion**

Officer Brandreth argues that he is entitled to judgment on
the pleadings on grounds of qualified immunity.  Petrello
objects, contending that the qualified-immunity issue is more
appropriately resolved at the summary judgment stage after
discovery is complete, and that, in any event, Officer Brandreth
violated clearly established constitutional rights.

To begin, Officer Brandreth may invoke qualified immunity
because he is sued in his individual capacity, rather than in
his official capacity.  See Febus-Rodriguez v. Betancourt-
Lebron, 14 F.3d 87, 91 n.3 (1st Cir. 1994).  "The doctrine of
qualified immunity shields officials from civil liability so
long as their conduct 'does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known.'"  Mullenix v. Luna, 136 S. Ct. 305, 308
(2015) (per curiam) (quoting Pearson v. Callahan, 555 U.S. 223,

231 (2009)).  "This doctrine 'gives government officials
breathing room to make reasonable but mistaken judgments,' and
'protects all but the plainly incompetent or those who knowingly
violate the law.'"  Hunt v. Massi, 773 F.3d 361, 367 (1st Cir.
2014) (quoting Carroll v. Carman, 135 S. Ct. 348, 350 (2014)
(per curiam)).  "Qualified immunity is an immunity from suit
rather than a mere defense to liability."  Pearson, 555 U.S. at
237 (internal quotation marks omitted).  "[C]ourts should
evaluate claims of qualified immunity at the earliest
practicable stage of litigation."  MacDonald v. Town of Eastham,
745 F.3d 8, 12 (1st Cir. 2014) (citing Hunter v. Bryant, 502
U.S. 224, 227 (1991) (per curiam)).

    The qualified-immunity analysis employs a two-prong test:
"(1) whether the facts alleged or shown by the plaintiff make
out a violation of a constitutional right; and (2) if so,
whether the right was 'clearly established' at the time of the
defendant's alleged violation."  Maldonado v. Fontanes, 568 F.3d
263, 269 (1st Cir. 2009) (citing Pearson, 555 U.S. at 232).
Courts may consider the qualified-immunity steps in any order.
See Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 23 (1st Cir.
2016); Rivera-Corraliza v. Puig-Morales, 794 F.3d 208, 215 (1st
Cir. 2015).

The "clearly established" prong has two elements:

(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right.

Stamps v. Town of Framingham, 813 F.3d 27, 33 (1st Cir. 2016) (internal quotation marks omitted).  "Whether the law was clearly established is itself a question of law for the court." Id. at 39 (citing Elder v. Holloway, 510 U.S. 510, 516 (1994)).

In conducting this analysis, the Supreme Court has cautioned courts "'not to define clearly established law at a high level of generality,' and reiterated that '[t]he dispositive question is whether the violative nature of particular conduct is clearly established.'"  Id. (quoting Mullenix, 136 S. Ct. at 308) (emphasis in original).  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix, 136 S. Ct. at 308 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam)).  "The plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation, and it is a heavy burden indeed." Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015) (citing McGrath v. Tavares, 757 F.3d 20, 29 (1st Cir. 2014)).  To meet this burden, the plaintiff must

> [I]dentify controlling authority or a robust consensus
> of persuasive authority such that any reasonable
> official in the defendant's position would have known
> that the challenged conduct is illegal in the
> particular circumstances that he or she faced—then-
> existing precedent, in other words, must have placed
> the statutory or constitutional question beyond
> debate.

Rivera-Corraliza, 794 F.3d at 214-15 (internal quotation marks, citations, and alterations omitted).

I.   Fourth Amendment Claim

In Count I, Petrello alleges that on June 3, 2015, Officer Brandreth violated her "clearly established right to be free from unreasonable seizures by detaining her without reasonable suspicion that she was committing a crime and issuing her a summons without probable cause that she had violated RSA 644:2(II)(c)."  Doc. no. 9 at ¶ 72.

In a § 1983 action, an officer accused of violating the Fourth Amendment "is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest."  Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004) (quoting Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992)). Qualified immunity "requires a somewhat lesser showing" than probable cause, and, therefore, "in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach."  Id. (citations omitted); see also Glik v. Cunniffe, 655 F.3d 78, 88

(1st Cir. 2011) ("Officers are entitled to qualified immunity 'so long as the presence of probable cause is at least arguable.'" (quoting Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992))); Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985) ("[Q]ualified immunity is pierced only if there clearly was no probable cause at the time the arrest was made.").

     "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Pontoo, 666 F.3d 20, 31 (1st Cir. 2011) (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)); see also Collins v. Univ. of N.H., 664 F.3d 8, 14 (1st Cir. 2011) ("When there is probable cause for an arrest, the Fourth Amendment's prohibition against unreasonable searches and seizures is not offended." (internal quotation marks omitted)).  "The inquiry into probable cause focuses on what the officer knew at the time of the arrest, and should evaluate the totality of the circumstances." United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005) (internal citations omitted).  "The question of probable cause, like the question of reasonable suspicion, is an objective inquiry." Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (citation omitted).  "The actual motive or thought process of the officer is not plumbed." Id. (internal quotation

marks omitted).  "[W]hen the facts that the officer knew are not reasonably in dispute, evaluating whether probable cause was present is a question of law." Baer v. Leach, No. 15-cv-65-JD, 2015 WL 7568585, at *6 (D.N.H. Nov. 24, 2015) (citing Holder, 585 F.3d at 504).

Here, the relevant facts surrounding Officer Brandreth's decision are straightforward and undisputed.  Officer Brandreth stopped Petrello and issued her a summons for one count of disorderly conduct, in violation of RSA 644:2, II(c), for obstructing vehicular traffic.  Under RSA 644:2, II(c), a person is guilty of disorderly conduct if he "[o]bstructs vehicular or pedestrian traffic on any public street or sidewalk or the entrance to any public building . . . ."  Disorderly conduct is a misdemeanor "if the offense continues after a request by any person to desist; otherwise, it is a violation."  RSA 644:2, VI. Officer Brandreth charged Petrello with disorderly conduct as a violation, not a misdemeanor.[3]  See doc. no. 9-3 at 7 of 18.

Petrello argues that she did not violate the statute because she never actually stepped into the roadway, and thus did not directly impede traffic.  The question is not, however,

---

[3] Under New Hampshire law, a police officer may arrest a person if he "has probable cause to believe that the person to be arrested has committed a misdemeanor or violation in his presence . . . ."  See RSA 594:10, I(a).

whether Petrello actually violated the statute; the relevant question is whether Officer Brandreth had arguable probable cause to believe that she did.

Officer Brandreth observed Petrello solicit a donation from the Cadillac.  Her actions caused the Cadillac to stop at a green light, which in turn forced the Jeep to stop and miss the green light.  While Petrello did not physically prevent any cars from moving, her interaction with the Cadillac impeded the flow of traffic on the roadway.  Based on those observations, and coupled with a common sense reading of the law, a reasonable officer could have believed that Petrello obstructed vehicular traffic and violated RSA 644:2, II(c).[4]  See generally United States v. Vongkaysone, 434 F.3d 68, 73-74 (1st Cir. 2006) ("Probable cause is a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (internal quotation marks omitted)).  Thus, Officer Brandreth had at least arguable probable cause to arrest Petrello.[5]

_____

[4] RSA 644:2, II(c) does not contain language limiting application of the statute to people who step in the street.

[5] Because the court finds arguable probable cause for arrest, there was necessarily an arguable basis for reasonable suspicion, a lower standard than probable cause, for an investigative stop.  See United States v. Mercedes-De La Cruz, 787 F.3d 61, 68-69 (1st Cir. 2015).

Finally, the court rejects Petrello's argument that the motion for judgment on the pleadings on Count I is premature because discovery is not complete.  As explained by the First Circuit, "when the complaint provides all of the facts needed to assess the plaintiff's claim," a ruling on qualified immunity can be made at the motion to dismiss stage.  See Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010).  Importantly, because qualified immunity is an "immunity from suit," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Pearson, 555 U.S. at 231-32 (internal quotation marks omitted).

Here, the complaint contains the facts needed to evaluate Petrello's claim.  Construing all reasonable inferences in Petrello's favor and accepting her factual allegations as true, the complaint shows that a reasonable officer in Officer Brandreth's position could have believed that he had probable cause to charge Petrello with violation-level disorderly conduct.

For these reasons, Officer Brandreth is entitled to qualified immunity on the Fourth Amendment claim.  Accordingly, the court grants defendant's motion for judgment on the pleadings on Count I.

II.  <u>First Amendment Claim</u>

     In Count II, Petrello alleges that the City of Manchester's
unlawful policy against panhandlers violated her First Amendment
rights and chilled her exercise of those rights.  Although most
of the allegations in Count II are directed at the City of
Manchester, Petrello also alleges that Officer Brandreth
violated her "clearly established First Amendment rights to
freely engage in expressive activity in a public place."  Doc.
no. 9 at ¶ 88.  Officer Brandreth argues that he is entitled to
qualified immunity on this claim because any First Amendment
right he allegedly violated was not clearly established at that
time.

     As of June 3, 2015, a police officer in Manchester, New
Hampshire would have known that soliciting contributions is
expressive activity entitled to First Amendment protection.
See, e.g., United States v. Kokinda, 497 U.S. 720, 725 (1990);
Village of Schaumburg v. Citizens for a Better Environment, 444
U.S. 620, 632 (1980).  However, that same police officer would
not have had notice on that date that the First Amendment
prohibited him from issuing a summons to a panhandler whom he
reasonably believed was obstructing traffic.

     On June 3, 2015, there was only one First Circuit case
directly addressing panhandling in the First Amendment context,
and, less than one month later, on June 29, 2015, that case was

14

vacated.  Thayer v. City of Worcester, 755 F.3d 60 (1st Cir. 2014), vacated and remanded, 135 S. Ct. 2887 (2015).  Because Thayer was still good law on June 3, 2015, the date of this incident, its holding is essential to the qualified-immunity question at hand.

In Thayer, the First Circuit denied a First Amendment overbreadth challenge to two city ordinances, one banning aggressive panhandling and the other limiting the right to stand in public roadways and traffic islands.  See 755 F.3d at 64-65. The First Circuit held that the panhandling ordinances were content-neutral time, place, and manner regulations, not content-based speech restrictions, and that the ordinances did not appear to burden substantially more speech than necessary to further the city's legitimate safety concerns.  See id. at 67-75.  In upholding the ordinances, the First Circuit noted that the record contained no "evidence that the police are failing to differentiate between hazardous and benign conditions when ordering demonstrators to leave or be charged with a violation." Id. at 74-75.  As such, the Thayer opinion signaled that the First Amendment's protection of panhandling could yield to public safety concerns.  Although the holding in Thayer was subsequently vacated, it was good law at the time of this

incident and thus supports a finding of qualified immunity in
this case.[6]

Petrello next points to the First Circuit's decision in
Cutting v. City of Portland, 802 F.3d 79 (1st Cir. 2015), to
argue that Officer Brandreth's conduct violated clearly
established law.  The First Circuit decided Cutting, however, on
September 11, 2015, more than three months after Officer
Brandreth's decision to issues a summons to Petrello.

Regardless, and contrary to Petrello's contention, Cutting
does not stand for the proposition that a police officer
violates the First Amendment where he enforces a traffic safety
law against a panhandler whom he reasonably believes is
obstructing the flow of traffic.  In Cutting, the First Circuit
struck down an ordinance that prohibited people from standing in
median strips.  See 802 F.3d at 81.  The City of Portland, Maine
passed the ordinance to address public safety issues caused by
panhandling.  Id. at 82.  The court found that the ordinance,
which banned virtually all expressive activity in the city's

---

[6] On June 29, 2015, the Supreme Court of the United States
vacated the Thayer judgment and remanded the case for further
proceedings in light of its decision in Reed v. Town of Gilbert,
135 S. Ct. 2218 (2015).  See 135 S. Ct. 2887 (2015).  In Reed,
the Supreme Court clarified the standard for determining whether
a government regulation is content-based or content-neutral.
See 135 S. Ct. at 2226-27.  And, on November 9, 2015, the United
States District Court for the District of Massachusetts applied
the holding in Reed to strike down both ordinances on First
Amendment grounds.  See 144 F. Supp. 3d 218 (D. Mass. 2015).

median strips, was not narrowly tailored to serve the city's

interest in protecting public safety: "[T]he City did not try—or

adequately explain why it did not try—other, less speech

restrictive means of addressing the safety concerns it

identified." Id. at 91.  In so holding, the court explained

that the City of Portland could enforce existing state and local

laws prohibiting disruptive activity in roadways—including

prohibitions on obstruction of traffic, disorderly conduct, and

abusive solicitation—to address the city's legitimate safety

concerns.  See id. at 91-92.

        In short, as of June 3, 2015, there was no clearly

established law prohibiting an officer from issuing a summons to

a panhandler whom he reasonably believed was obstructing

traffic.  Officer Brandreth is therefore entitled to qualified

immunity on the First Amendment claim.  Accordingly, the court

grants defendant's motion for judgment on the pleadings on

Count II.

## III. Fourteenth Amendment Claim

        Finally, in Count III, Petrello alleges that the City of

Manchester's unlawful policy against panhandlers violated her

Fourteenth Amendment equal protection rights.  In her objection

to the motion for judgment on the pleadings, Petrello

voluntarily withdraws any claim in Count III against Officer

17

Brandreth.  See doc. no. 17 at 15 n.5.  For that reason, the
court dismisses without prejudice Count III to the extent it
asserts any claim against Officer Brandreth.  See generally Fed.
R. Civ. P. 41(a)(2).  The motion for judgment on the pleadings
on Count III is therefore denied as moot.

### Conclusion

For the foregoing reasons, defendant's motion for judgment
on the pleadings (doc. no. 14) is granted as to Counts I and II
and denied as moot as to Count III.  Count III, as asserted
against Officer Brandreth in his individual capacity, is
dismissed without prejudice.  The City of Manchester is the only
defendant remaining in the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 21, 2017

cc:  Elliott Berry, Esq.
     Gilles R. Bissonnette, Esq.
     Robert J. Meagher, Esq.